# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

## WESTERN DIVISION

UNITED STATES OF AMERICA

      v.                               Case No.: 3:07CR192-NBB-SAA

RICHARD F. SCRUGGS,
DAVID ZACHARY SCRUGGS,
SIDNEY A. BACKSTROM,

## MOTION TO DISMISS COUNTS 2, 3 & 4 OF THE INDICTMENT WITH COMBINED MEMORANDUM OF LAW

Defendants Richard F. Scruggs, David Zachary Scruggs, and Sidney A. Backstrom hereby move this Court to dismiss counts 2, 3, & 4, alleging violations of 18 U.S.C. § 666(a)(2), pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). This Court lacks subject matter jurisdiction because the Government's allegations do not constitute a federal crime under section 666. Furthermore, section 666 is unconstitutional as it would be applied to Defendants' alleged conduct.

## I.      INTRODUCTION

Defendants were indicted on three separate counts of violating 18 U.S.C. § 666(a)(2), a statute that criminalizes bribery involving federal funds. With respect to these counts (Count 2, Count 3, and Count 4), the Government alleges that Defendants

> did knowingly and corruptly give, offer and agree to give something of value to an agent of a state government with the intent to influence and reward the agent in connection with a business transaction, and series of transactions of such state government involving something of value of $5000 or more, namely . . . [giving various sums of money] to the Honorable Henry L. Lackey, Circuit Court Judge, Third Circuit, State of Mississippi, being an agent of a subdivision of the judicial branch of the state government of Mississippi, which received benefits in excess of $10,000 in any one-year period for each of the years 2006 and 2007, from federal programs involving a grant, contract, subsidy, loan, guarantee, insurance and other forms of federal assistance to influence and reward Henry L. Lackey in connection with the Third Circuit court case styled <u>Jones, et al, v. Scruggs, et al</u>, Civil Action No. L07-135.

Indictment, at 8, 9, 10 (emphasis added).  For three separate and independent reasons, these counts must be dismissed as a matter of law.

*First*, Judge Lackey is not an "agent" subject to the reach of the charged federal statute. Based on discovery and information provided by the Government, Defendants understand that the Government intends to prove that Judge Lackey is an agent of two separate entities that it believes have received the requisite $10,000 in federal funding:  Lafayette County and the Mississippi Administrative Office of Courts (AOC).  But Judge Lackey, by law, is not an agent of either entity.  The Fifth Circuit has laid out a multi-factor test for determining whether an individual, for purposes of a section 666 indictment, qualifies as an "agent."  *See United States v. Phillips*, 219 F.3d 404, 410-13 (5th Cir. 2000); *United States v. Moeller*, 987 F.2d 1134, 1137-38 (5th Cir. 1993); *see also United States v. Harris*, 2007 WL 2028948 (S.D. Miss. July 11, 2007). The *Phillips* test examines the nature of the government entity, the individual's legal relationship to that entity, and the degree to which the entity and the individual can control or bind each other.  Judge Lackey does not qualify as an "agent" of Lafayette County, or of the AOC. According to the Mississippi Constitution and Mississippi statute, Judge Lackey is not an employee of the AOC or Lafayette County.  He is not under the legal control of either entity, and neither entity can discipline him or remove him from office.  Judge Lackey not only fails to control or administer any *federal funds* received by those entities, but as a circuit judge, he does not act "on behalf of" either entity with respect its funds at all.  Most importantly, the role of the circuit judge in Mississippi is an independent one, elected by the people and set apart from the machinations of county government or the domination of any state agency.  As such, Judge Lackey does not qualify as an agent under section 666(a)(2), and this Court lacks jurisdiction over any actions that might have been taken with respect to him.

*Second*, the purported bribe was not made "in connection with any business, transactions or series of transactions" of Lafayette County or the Administrative Office of Courts, as required by the statute.  18 U.S.C. § 666(a)(2).  Even if that statutory language were read expansively, a circuit judge's decision on a motion to compel arbitration is not the "business" of Lafayette

County.  Likewise, the provisions establishing the Mississippi AOC restrict its purview to the "nonjudicial business of the courts," which does not include deciding civil motions.  Miss. Code § 9-21-1.  If there is no connection between the allegation of bribery and the "business" or "transactions" of an entity that itself received requisite federal funds, then there is no federal crime.  This is a jurisdictional flaw that independently requires dismissal.

*Third*, even if Judge Lackey is an "agent" for purposes of 666(a)(2), and the Government could prove that the requisite "agency" has received more than $10,000 in federal funds over a continuous twelve-month period, the use of this statute, as the Government would apply it to Defendants, is unconstitutional.  Congress's power to monitor and assure the integrity of federal funds derives from its Article I spending power and the Necessary & Proper Clause.  But, as the plain language of the Tenth Amendment makes clear, the framers of the Constitution never intended that Congress's power be limitless.  While the United States Supreme Court has rejected a facial constitutional challenge to section 666(a)(2), *see Sabri v. United States*, 541 U.S. 600 (2004), here this Court is confronted with circumstances so attenuated, and so far removed from the disbursement of federal funds, that the statute cannot be constitutional *as applied* to Defendants.

The Court need not find that all three of these reasons warrant dismissal.  If any of the Government's jurisdictional prerequisites is not met, or if the application of section 666 to these Defendants would be unconstitutional, the section 666 counts must be dismissed now, regardless of what proof the Government might submit at trial.

## II.     RELEVANT LAW

Federal Rule of Criminal Procedure 12 enables a Defendant to raise, at any time while the case is pending, a claim that the indictment fails to invoke the Court's jurisdiction or to state an offense.  Fed. R. Crim. P. 12(b)(3)(B).  Threshold legal issues, such as questions of jurisdiction, are properly addressed on a motion to dismiss the indictment.  S*ee United States v. McCormack*, 31 F. Supp. 2d 176, 180 (D. Mass. 1998) (citing *United States v. Korn*, 557 F. 2d 1089, 1090 (5th Cir. 1977).  District courts have decided the precise issue here—whether an indictment

sufficiently alleges a violation of section 666—on motions to dismiss.  *See, e.g., United States v. Moeller*, 987 F.2d 1134, 1136 (5th Cir. 1993); *United States v. LaHue*, 998 F. Supp. 1182, 1184 (D. Kan. 1998); *United States. v. Stewart*, 727 F. Supp. 1068, 1072 (N.D. Tex. 1989).  Likewise, numerous courts have decided constitutional challenges to the application of section 666 upon a Motion to Dismiss.  *See, e.g., United States v. Ganim*, 225 F. Supp. 2d 145, 162-63; *see also United States v. Suarez*, 263 F.3d 468, 476 (6th Cir. 2001) (noting that a challenge to the constitutionality of the application of section 666 is a question of law).

The federal funds bribery statute, 18 U.S.C. § 666(a)(2), requires the Government, to prove at trial:  1) that Defendants gave, offered, or agreed to give something of value to another person; 2) with "intent to influence or reward <u>an agent</u> of an organization or of a State, local or Indian tribal government, or any agency thereof";[1] 3) that the selected government entity or agency receives benefits in excess of $10,000 from the federal government within a specific twelve-month period overlapping with the commission of the alleged criminal acts; 4) that the bribe or offer was made <u>in connection with any business or transaction of such government entity or agency</u>; and 5) that the business or transaction of the entity or agency involved or related to something worth $5000 or more in value.  18 U.S.C. §§ 666(a)(2), (a)(5); *United States v. Phillips*, 219 F.3d 404, 410 (5th Cir. 2000).  The term "agent" is defined in the statute as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, or representative." *Id.* § 666(d)(1).

Determining whether the allegedly bribed individual is an "agent" under the law is a necessary predicate to this Court's exercise of jurisdiction over Defendants.  *See United States v. Lipscomb*, 299 F.3d 303, 315-16 (5th Cir. 2002); *Stewart*, 727 F. Supp. at 1069.   Thus, the key inquiry is whether the parties who were offered or accepted bribes were in fact agents of an entity that received the requisite federal funds.  *United States v. Moeller*, 987 F.2d at 1136 (5th

---

[1] Defendants do not dispute that both Lafayette County and the Administrative Office of Courts constitute government entities or agencies.  *See* 18 U.S.C. § 666(d)(2) (defining "government agency").

Cir. 1993).  The requirement that the bribe be made "in connection with the business or transactions" of the entity receiving federal funds is also jurisdictional.  *McCormack*, 31 F. Supp. 2d at 181 (describing it as a "threshold legal question").  Thus, If Judge Lackey was not an agent of either entity, or the alleged bribe did not pertain to the "business" of either entity, these counts must be dismissed.[2]

## III.   ARGUMENT

**A.    Because Judge Lackey is Not an Agent of Either Lafayette Count or the AOC, Counts 2, 3 and 4 Must Be Dismissed for Lack of Jurisdiction**

### 1.        The Fifth Circuit Has Clearly Articulated What It Means to Be an Agent

For purposes of this Motion, the Court can assume that, at trial, the Government will be able to prove that both Lafayette County and the AOC receive more than $10,000 in federal funds in a relevant twelve-month period.[3]  The Court can also assume that the Government will adduce evidence showing that each entity provides some amount of funds to support the operation of the <u>courthouses</u> where Judge Lackey sits.  These facts, however, do not establish agency.  In a pair of decisions over the past fifteen years, the Fifth Circuit has identified distinct factors to be evaluated in determining whether or not an individual is an agent of a particular government agency or entity.  As explained below, these factors are not present here.

In *United States v. Moeller*, the Fifth Circuit established that the critical issue is whether or not the bribed individual is an agent of the entity that itself received $10,000 or more in federal funds.  987 F.2d 1134, 1137 (5th Cir. 1993) ("[T]here must be some nexus between the criminal conduct *and the agency receiving federal assistance*.") (emphasis added). In *Moeller*, the officials accepting bribes were inspectors for the Texas Federal Inspection Service (TFIS), a federal-state partnership overseen by the Texas Department of Agriculture (TDA) but which did not itself receive more than $10,000 per year in federal funds.  The Government advocated a

---

[2] Additionally, this court, like all federal courts, is guided by the Rule of Lenity that "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."  *United States v. Bass*, 404 U.S. 336, 347 (1971).

[3] Defendants do not concede this is factually correct.  Such issues of fact, however, do not matter for the purpose of evaluating the jurisdictional issues raised here.

more expansive approach to agency in which the Defendants, who were undoubtedly agents of TFIS, would be designated "agents" of TDA simply because TFIS was a "subdivision" of the TDA and (presumably) received some funds on a pass-through basis. *Id.* Instead, the Court "refocus[ed]" its analysis on "whether the defendants were agents of TDA as they performed their functions for TFIS." *Id.* The Court found that the TFIS inspectors were, in fact, agents of TDA because: 1) TDA was responsible for "training and supervising" TFIS inspectors; 2) TFIS employees performed discretionary functions on behalf of TDA, including the enforcement of TDA regulations; and 3) funds collected by the TFIS were remitted to the state treasury and, in certain situations, might revert to the TDA itself. *Id.* at 1138 & n. 15.

By analogy, the Third Circuit Court District is the equivalent of TFIS, and Lafayette County and the AOC are equivalent to the TDA. County courthouses might receive some money from Lafayette County or the AOC, but the real question, indeed the only question, is whether Judge Lackey (like the TFIS employees) is an agent of one of those entities.

Seven years later, in *United States v. Phillips*, 219 F.3d 404 (5th Cir. 2000), the Fifth Circuit re-visited the issue of what makes one "an agent" for purposes of section 666. In *Phillips*, the Fifth Circuit reversed a § 666(a)(1) conviction against the tax assessor of St. Helena Parish, Louisiana, who had used his position to engage in various kickback schemes involving friends and political allies.[4] The Government asserted (and Phillips did not dispute) that St. Helena Parish received more than $10,000 in federal funds through the food stamp program. The issue for appeal, then, was "whether for purposes of § 666, Phillips as tax assessor was an agent of the parish." 219 F.3d at 410. In determining that the St. Helena Parish tax assessor, despite his title, was <u>not</u> an agent of St. Helena Parish, the Court refined and expanded the list of relevant factors from *Moeller*. The Court noted that:

---

[4] Section 666(a)(1) prohibits an agent of a state or local government, or agency thereof, that receives $10,000 or more in federal funds, from stealing or converting property of that entity valued at $5,000 or more, or accepting a bribe relating to agency transactions of greater than $5,000. While sections 666(a)(1) and 666(a)(2) proscribe different acts, cases interpreting one provision are considered equally applicable to the other, since they represent the two sides of the bribery coin. *See, e.g., United States v. Spano*, 401 F.3d 837, 840 n.2 (7th Cir. 2005).

1) The Louisiana Constitution treats tax assessment districts as independent of parish government;

2) The assessor's duties and responsibilities were set by state law, not local law;

3) The parish had no "power, authority, or control over the assessor's duties or job";

4) The activities of the assessor were not supervised by local officials;

5) The assessor's salary and benefits were not paid by the parish;

6) Phillips was not "authorized to act on behalf of the parish with respect to its funds."

*Id.* at 412-13.[5]

In other words, to qualify as an agent under Fifth Circuit law, the individual must either be an employee, officer, manager or representative of the government agency that receives federal funds; or he must be authorized to act on the entity's behalf, a legal test based on the *Phillips/Moeller* factors. Because the tax assessor in *Phillips* did not qualify under either approach, the Court concluded that "Phillips's actions did not and could not have threatened the integrity of federal funds or programs." *Id.* at 413.

2.    **Judge Lackey is Not an Agent of Lafayette County, Mississippi**

While the Third Circuit Court District on which Judge Lackey sits does resolve disputes initiated in Lafayette County, Miss. Code § 9-7-13, Judge Lackey is not an agent of that county, or any other county, for purposes of section 666. As a preliminary matter, Mississippi's constitutional and statutory structure make clear that a circuit judge is not an employee, officer, manager, or representative of any county. Miss. Const., Art. 6, §§ 152-156; Miss. Code § 9-7-1. This is fundamental to the separation of powers within Mississippi's government. Miss. Const., Art. 1, §§1-2; *see also Hosford v. State*, 525 So. 2d 789, 797-98 (Miss. 1988) (emphasizing independence of Mississippi courts from county boards of supervisors). "County officials" are

---

[5] In evaluating whether an individual is "authorized to act on behalf" of a government entity, the Fifth Circuit also recommends looking to general principles of agency law. *Phillips*, 219 F.3d at 411 n.7, 412 n.12; *see also United States v. Ferber*, 966 F. Supp. 90, 100 (D. Mass. 1997) (invoking agency law to interpret the "authorized to act on behalf of another person" language of § 666(d)(1)).

designated as such in the Mississippi Constitution: *circuit clerks* are included in that list, but *circuit judges* are not.  *See* Miss. Const., Art. 5, § 138.

Moreover, as a matter of law, each of the six *Phillips* factors confirms that Judge Lackey was not an agent of Lafayette County.  <u>First</u>, like Louisiana tax assessors districts, the Third Circuit Court District is a separate and distinct entity in the Mississippi constitutional system, independent of county government and independent from any other court.  *See id.*, Art. 6, §§ 144, 152, 156; Miss. Code § 9-7-1 *et seq.*  The Mississippi Constitution assigns discrete and specific powers to each set of courts within the judicial branch, granting circuit courts "original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and such appellate jurisdiction as shall be prescribed by law."  Miss. Const., Art. 6, § 156; *see also* Miss. Code § 9-7-81.  <u>Second</u>, the duties and responsibilities of a circuit court judge are not set by local law.  The Third Circuit Court District, which includes Benton, Calhoun, Chickasaw, Lafayette, Marshall, Tippah, and Union Counties, is a creation of state law. Miss. Const., Art. 6, § 152; Miss. Code §§ 9-7-13 – 9-7-14.  Third Circuit judges are elected by Mississippi citizens across multiple counties, Miss Const., Art. 6, § 153; Miss. Code §§ 9-7-1, 9-7-13, 9-7-14; they are paid a fixed salary from the State Treasury, Miss. Const, Art. 6, § 166; and, as discussed above, their jurisdiction is established solely by state law.  Circuit judges serve the people of their judicial district, not any particular county.

Looking at the <u>third</u> and <u>fourth</u> factors, Lafayette County has no "power, authority or control" over Judge Lackey.  *Phillips*, 219 F.3d at 412.  Judge Lackey is subject only to the discipline of the Commission on Judicial Performance, Miss. Code, § 9-19-1 *et seq.*, and can be formally removed from office only by that entity, *id.* § 9-19-17, or by a state-sanctioned process that applies to all public officials, *id.* §§ 25-5-1 *et seq.*  In the entire Mississippi code section addressing the powers, duties, and authority of county governments, Miss. Code, Titles 17 & 19, there is not a single provision indicating county control over circuit judges.[6]

---

[6] It is true that circuit judges can, in rare situations, appoint an interim sheriff, Miss. Code § 19-25-9, or remove deputies and bailiffs, *id.* § 19-25-19, and that counties provide furnishings for courthouses within their jurisdiction, *id.* § 19-7-23, but this hardly represents "power, control or

Fifth, Judge Lackey's salary and benefits are not at all paid by Lafayette County. Miss. Code § 25-3-35 (fixing annual salary for circuit court judges).

Sixth, Judge Lackey is not authorized to act on behalf of Lafayette County with respect to its funds. As was the case with tax assessor districts in *Phillips*, the Third Circuit Court District is a separate and distinct financial entity from Lafayette County. Judge Lackey does not have any input into the budget or spending of funds in Lafayette County, as that role is reserved explicitly to the County Board of Supervisors. *Id.* § 19-11-7 *et seq.* While Lafayette County is obligated by state law to provide courthouse space, furnishings and office supplies that circuit judges use when they sit in Lafayette County, *id.* §§ 19-3-41(1), 19-7-23, that alone hardly transforms *Judge Lackey* into an agent of the county; if anything, it reinforces that the Third Circuit Court District is separate from the county. *Phillips*, 219 F.3d at 412 n.13.[7]

The correctness of this result is reinforced by the recent district court decision on a motion to dismiss § 666 counts in *United States v. Harris*, 2007 WL 2028948 (S.D. Miss. July 11, 2007). Applying the *Phillips* factors, the court held that Mississippi *circuit clerks* are "agents" of the county—because the Mississippi Constitution does not set them apart from the county where they are situated; because they hold a "substantial amount of county funds" at any given time; because they are authorized to control some county employees; because the county pays a portion of their state retirement benefits; and because they serve as the county registrar. *Id.* at *2-4. The court concluded: "The vital role that clerks play in county governance . . . weighs in favor of finding them to be county agents." *Id.* at *4. Once again, none of the facts mentioned in *Harris* are true of circuit court judges. Therefore, even if the Government can

---

authority" over the judges therein. *Compare* Miss. Op. Atty. Gen. No. 2001-0708 (November 30, 2001) (indicating that the responsibility to oversee the everyday administrative duties of the *justice court* lies with the board of supervisors).

[7] Nor or any of the additional factors mentioned in *Moeller* present here: Lafayette County plays no role in training or supervising circuit judges, circuit court judges do not perform discretionary tasks on behalf of Lafayette County, and, unlike TFIS, circuit judges are not in the business of collecting funds for Lafayette County. 987 F.2d at 1138.

prove that Lafayette County has received the requisite funds, as a legal issue, Judge Lackey is not an agent, and this Court does not have jurisdiction.

### 3. Judge Lackey is Not an Agent of the Administrative Office of Courts Either

Nor, as a matter of law, can the Government prove that circuit judges are agents of the AOC. Quite obviously, elected circuit judges are not employees of the AOC. Miss. Const., Art. 6, § 153; Miss. Code § 9-21-7. And the *Phillips* factors reinforce the separation between circuit court judges and the AOC. As discussed above, circuit courts derive independent authority and jurisdiction directly from the Mississippi constitution and state law. The AOC, by contrast, reports directly to the Chief Justice of the Mississippi Supreme Court. Miss. Code § 9-21-3. It was created by the Mississippi legislature to "assist in the efficient administration of the *nonjudicial business* of the courts of the state." *Id.* § 9-21-1. Mississippi law defines the various duties of the AOC and its Administrative Director, which range from preparing statistical reports and evaluating docket practices to implementing personnel policies for nonjudicial personnel employed by the state's various courts to making recommendations about the physical accommodations of the judicial system. *Id.* §§ 9-21-3, 9-21-9. The AOC, therefore, does oversee certain aspects of the court system, but none of its duties involve managing or overseeing circuit judges themselves.

Likewise, the AOC has no supervisory power or control over the legal work of Mississippi circuit judges. The AOC cannot review judicial decisions, it does not pay the salaries of circuit judges, and it does not have the ability to alter the duties or status of circuit judges. While the AOC is authorized to request "information and statistical data" from Mississippi's various courts, *id.* § 9-21-19, the provision of information does not an agent make. Otherwise, all American citizens would be agents of the IRS and a witness under trial subpoena would be an agent of the court.[8]

---

[8] That the Mississippi legislature had to explicitly authorize the AOC to seek information from circuit courts is itself a strong indication that circuit courts and their judges are not agents of the AOC. There would be no need for a statute to inform an agent that he must provide information to his principal.

Most importantly, nothing in the statutory structure of the AOC indicates that a circuit judge can bind the AOC or act on its behalf in any respect, much less with respect to its funds. Mississippi law makes clear that the Administrative Director alone is authorized to "disburse [ ] aid, assistance, funds, monies, grants or subgrants" that are "directed to the office from any federal governmental agency or entity." Miss. Code § 9-21-11(1). The same is true for any "state monies appropriated to the [AOC] or any courts of the state for any and all functions or projects directly or indirectly affecting the operation of any court." *Id.* § 9-21-13. The task of deciding how money allocated to the AOC is spent falls entirely on the Administrative Director and his staff; circuit judges have no financial control over this money. Indeed, Mississippi law explicitly calls out the circuit courts' lack of control over AOC money, by specifying that they may apply for their own federal assistance or grants if they so choose. *Id.* § 9-21-11(2). Were the circuit judges already fiduciary agents of the AOC, this statutory language would be surplusage.

Section 9-1-36 of the Mississippi Code—a provision that was part of the Government's discovery submission—likewise fails to demonstrate that circuit judges are agents of the AOC. Section 9-1-36 details the process by which judges apply to the AOC for funding of court support staff, such as secretaries and law clerks. Judges submit to the AOC "a proposed personnel plan setting forth what support staff is deemed necessary." *Id.* The AOC then "must approve the positions, job descriptions and salaries before the positions may be filled." *Id.* Critically, however, while the judge "appoints" support staff following AOC approval, the judge cannot hire staff on his own volition or otherwise man the financial levers of the AOC. Further, the support staff remain at all times "employees of the Administrative Office of Courts" and their compensation is set "pursuant to personnel policies established by the [AOC]." *Id.* In other words, both the terms of employment and the compensation of these staff are controlled not by circuit judges but by the AOC. Finally, even to the extent AOC funds are used to provide support staff for Judge Lackey, that does not convert Judge Lackey into an agent of the AOC any more than the provision of "office space, furniture and utilities" by St. Helena Parish could have

made the St. Helena tax assessor an agent of the parish.  *See Phillips*, 219 F.3d at 412 n.13.  The

Fifth Circuit has already rejected this line of argument.

**B.      The Conduct Alleged in the Indictment Was Not "In Connection with Any Business, Transaction or Series of Transactions" of Lafayette County or the AOC.**

Jurisdiction does not lie with this Court for a separate and independent reason—because

the Government cannot prove that the bribe alleged in the Indictment was made in connection

with the business or transactions of Lafayette County or the AOC.  Section 666(a)(2) requires not

only that the Defendants have offered something of value to influence an agent of a government

entity or agency that receives $10,000 in federal funds; it also requires that the offer be "in

connection with any business, transaction, or series of transactions *of such organization,*

*government, or agency* involving anything of value of $5,000 more."  18 U.S.C. § 666(a)(2).

Even assuming that deciding private civil cases can be categorized as a "business" or

"transaction," it is certainly not the "business" or "transaction" of either the Administrative

Office of Courts or of Lafayette County.

As discussed at length above, the Third Circuit Court District is a distinct constitutional

unit separate and apart from any county, and its circuit judges, including Judge Lackey, do not

act on behalf of Lafayette County.  Lafayette County retains county-paid and county-supervised

justice court judges, but Judge Lackey is not one of them.  That Judge Lackey might occasionally

sit in Lafayette County on behalf of the Third Circuit Court District does not make his "business"

the business of the county any more than would the activities of a state auditor paying a visit to a

Lafayette County business or a federal census taker walking the blocks of North Lamar Avenue**.**

The Third Circuit Court District's "business," deciding cases, is not the "business" of Lafayette

County.

Similarly, deciding civil cases between private parties is not the "business" of the AOC.

The AOC's "business" is defined by Mississippi law and is limited to "the nonjudicial business

of the courts of the state and [ ] improving the administration of justice in Mississippi by

performing the duties and exercising the powers as provided in this chapter."  Miss. Code § 9-21-

1.  Mississippi law gives the AOC no responsibility for deciding motions, reviewing the outcome of cases, or evaluating relations between judges and parties practicing before them.  *See id.* § 9-21-1 *et seq.*  Therefore, the allegations described in the Indictment cannot serve as the basis for a federal crime, and this case must be dismissed.  *McCormack*, 31 F. Supp. 2d at 181.

**C.      Application of Section 666 to These Defendants Would Exceed Congress's Powers under the Spending Clause and Violate the Tenth Amendment**

Should the Court decide that the Government can meet its jurisdictional hurdles, which Defendants believe it cannot, the Constitution nonetheless forbids the Government's prosecution of this case, because: 1) public monies are not implicated at all, and 2) the conduct at issue is too attenuated from any federal interest in the alleged crimes.  This provides a third independent basis for dismissing the Indictment.

The Supreme Court previously has held that section 666 is facially constitutional as an exercise of Congress's spending power, Art. I, § 8, cl. 1, and its corresponding authority under the Necessary & Proper Clause, Art. I, § 8., cl. 18.  *See Sabri v. United States*, 541 U.S. at 605-08.  However, the *Sabri* Court left open the possibility that Defendants like those here would bring as-applied challenges to the statute.  As Justice Thomas has explained:  "Without a jurisdictional provision that would ensure that in *each* case the exercise of federal power is related to the federal interest in a federal program, § 666 would criminalize routine acts of fraud or bribery, which, the Court admits, would 'upset the proper federal balance.'"  *Fischer v. United States*, 529 U.S. 667, 689 (2000) (Thomas, J., dissenting) (emphasis in original).

The defendant in *Sabri*, a real estate developer, was indicted for offering bribes to a Minneapolis City councilman who also sat on the Minneapolis Community Development Agency, a government entity responsible for approving community economic development grants Sabri sought from the city.  541 U.S. at 602-03.  Sabri raised a facial challenge to section 666, arguing that "the law can never be applied constitutionally because it fails to require proof of any connection between a bribe or kickback and some federal money."  *Id.* at 604.  The Court rejected this proposition, holding that the statute need not require some particular connection

between the bribe and the distribution of specific federal funds; the flow of $10,000 in federal money into the agency's coffers is enough. *Id.* at 605-06. The *Sabri* decision was premised explicitly on the fungibility and liquidity of federal funds that flow into a state or local agency account, and the Court explained that schemes to siphon off or wrongly obtain state or local agency funds fall within the federal interest precisely because it is impossible to determine whether the stolen dollar is of state or federal origin. *Id.*

The *Sabri* Court did not decide, however, that any and every application of section 666 is constitutional.[9]  It is plain that Congress's power under the Spending Clause and the Necessary and Proper clause must have some limits. *See United States v. Lopez*, 514 U.S. 549 (1995); *South Dakota v. Dole*, 483 U.S. 203, 207 (1987). Such limits on Congress's enumerated powers are enshrined in the text of those powers and also in the Tenth Amendment, which states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const., amend. X. The Tenth Amendment reflects the principle that "[a]lthough the States surrendered many of their powers to the new Federal Government, they retained a 'residuary and inviolable sovereignty.'" *Printz v. United States*, 521 U.S. 898, 918-19 (1997) (quoting The Federalist No. 39, at 245); *see also Messer v. Meno*, 130 F.3d 130, 142-43 (5th Cir. 1997) (R. Garza, J., concurring) (noting that "one of the main ideas underlying the Tenth Amendment, and the very nature of our federal system" is that "federal courts should not meddle into the internal affairs of states").

Consistent with that principle, the Fifth Circuit has acknowledged that there must be some limitation on the federal government's power to criminalize local acts of bribery. *Lipscomb*, 299 F.3d at 324 (reviewing constitutionality of section 666 based on "the nature of the federal interest embodied in this case and the relationship between that interest and Lipscomb's conduct"); *United States v. Westmoreland*, 841 F.2d 572, 578 (5th Cir. 1988) (reviewing

---

[9] Indeed, the nature of an as-applied challenge, versus a facial challenge, is that the decision be premised on the particular facts of the case. *See Henderson v. Stadler*, 287 F.3d 374, 380 n.6 (5th Cir. 2002) ("The unavailability of a facial challenge does not imply, of course, that an as-applied challenge at some future date . . . would be foreclosed."); *see also* CORPUS JURIS SECUNDUM: CONSTITUTIONAL LAW, § 187.

legislative history and concluding that "the statute does not encompass every local bribery" because its reach is limited to "entities that receive a substantial amount of federal funds and to agents who have the authority to effect significant transactions").  This must be so, for the Supreme Court has made clear that when federal criminal laws are too attenuated from interstate commerce or some other valid Article I power, they are unconstitutional.  *See United States v. Morrison*, 529 U.S. 598, 610 (2000) (invalidating Violence Against Women Act because the criminalized conduct had "nothing to do with commerce or any sort of economic enterprise"); *Jones v. United States*, 529 U.S. 848 (2000) (striking federal arson statute insofar as it reached to private residences rather than commercial property); *see also United States v. Garcia*, 143 F. Supp. 2d 791, 805-809 (E.D. Mich. 2000) (reversing RICO conviction for gang activities that did not involve commercial activity and were too attenuated from interstate commerce).

Although the precise outer limits of section 666 are still undefined in the Fifth Circuit, *compare Phillips*, 219 F.3d at 411, *with Lipscomb*, 299 F.3d at 336, wherever that line might be drawn, the alleged acts in this case fall beyond the outer margins of any federal interest.  First, there is no relationship between the subject of the purported bribe (the *Jones v. Scruggs* case) and any funds, be they federal, state or local.  The result of the purported bribe was not that Defendants would be awarded state-paid legal business or that they would gain some advantage in obtaining state or local funding, nor would the bribe have interfered with the integrity of a federal program.  Instead, the indictment alleges that Defendants paid bribes to Judge Lackey to obtain a favorable ruling on a motion to compel arbitration in the *Jones v. Scruggs* case.  Judge Lackey's ruling on a motion to compel arbitration, between two private parties, could not affect any funds of Lafayette County, the AOC or any other government entity.  Second, Judge Lackey's lack of control over any funds of Lafayette County or the AOC that might be commingled with federal funds removes this case from the heartland of section 666 cases.  The alleged bribes are purely local in character, and perhaps may be prosecuted under state law, but there are no federal funds, or federal programs, or federal interests implicated by them.

Conviction of Defendants here would be the single broadest application of section 666 on the books.  It is one thing to say, as the Supreme Court has held, that there need be no nexus between the alleged crime and the *federal funds*, because all funds are liquid once they are combined in a state or local bank account.  *See Sabri*, 541 U.S. at 606.  But it is quite another to say that the alleged crime need have no nexus to *funds* at all.[10]  Every published section 666 decision relating to acts of judicial bribery has involved bribes paid *to gain access to state or local funds under the judge's control*.  In *United States v. Castro*, defendants were convicted for a scheme in which they paid kickbacks to a local judge in exchange for appointments to serve as Special Assistant Public Defenders, an appointment that would authorize payments to the defendants from the Dade County Finance Department.  89 F.3d 1443, 1454 (11th Cir. 1996).  The same was true in *United States v. Massey*, 89 F.3d 1433 (11th Cir. 1996), which arose from similar facts.  Likewise, in *United States v. Grubb*, 11 F.3d 426 (4th Cir. 1993), the circuit judge convicted of aiding and abetting a section 666(a)(2) bribe was involved in a scheme whereby, in exchange for campaign contributions, the bribed official would hire the bribing party as a part-time detective, resulting in the expenditure of local monies.  In each of these cases, some funds of the relevant agency would be siphoned away in graft, even if the funds could not be traced to a particular federal source.  That is not the case here.

In fact, the one district court opinion to confront a section 666 indictment like this one, where the result sought by the alleged bribe was favorable consideration in a civil court case, dismissed the indictment.  *See United States v. Frega*, 933 F. Supp. 1536 (S.D. Cal. 1996).

_____

[10] Even in *United States v. Marmolejo*, 89 F.3d 1185 (5th Cir. 1996), *aff'd in part sub nom. Salinas v. United States*, 522 U.S. 52 (1997), one of the broadest applications of section 666, in which sheriffs were convicted for accepting bribes from federal prisoners housed in their county jail in exchange for conjugal visits, the Fifth Circuit went out of its way to clarify that the federal interest in the case derived from the close connection between the criminal misconduct and the purpose of the federal funding (housing of federal prisoners pursuant to federal policy mandates). *Id.* at 1192-93.  The Court noted that the bribery occurred while the defendants were "carrying out their duties under a Federal program," and that it interfered with the goals and expectations of the program under which the federal monies were provided. *Id*; *see also Salinas*, 522 U.S. at 60-61 ("Beltran was . . . a prisoner held in a jail managed pursuant to a series of agreements with the Federal Government.  The preferential treatment accorded to him was a threat to the integrity and proper operation of the federal program.")  There can be no such claims in this case.

Frega was indicted for a twelve-year practice of providing gifts to judges before whom he regularly appeared. *Id.* at 1538. There was no suggestion that the judicial rulings sought by Frega bore any connection to state or local funds, much less federal funds. Rather than establish some sort of funding connection, the Government instead took the position that "every state employee would fall within the jurisdiction of the statute," regardless of how disconnected they were from the financial levers of the state or locality. *Id.* at 1540. The court in *Frega* rejected this interpretation, noting that while "it is sufficient if the state employee has access . . . to commingled state and federal funds," section 666 "was intended to protect the integrity of federal funds, and not as a general anti-corruption statute."[11] The district court reached the same result in *United States v. McCormack*, dismissing a section 666 bribery case involving a local policeman where the court found "no connection whatsoever" between the bribe and any funds—federal, state or local. 31 F. Supp. 2d 176, 186-87 (E.D. Mass. 1998) (dismissing indictment on Tenth Amendment grounds).

These cases, and the lines they have drawn with respect to the Spending Clause, reflect the Congressional purpose behind passage of section 666. *See* S. Rep. No. 225, 98th Cong., 2d Sess, 369-370 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3510-11 (Congress's stated aim in passing section 666 was "to protect the integrity of the vast sums of money distributed through federal programs from theft, fraud, and undue influence by bribery"); *see also United States v. LaHue*, 170 F.3d 1026, 1029 (10th Cir. 1999) ("Section 666 was designed to prevent diversions of federal funds enroute to their intended beneficiaries . . . ."). As the Fifth Circuit explained in *Lipscomb*: "A corrupt state or city official who has *real responsibility for, or often participates in, the allocation of federal funds* is a 'threat to the integrity' of those funds, even if they are not actually or directly infected by his corruption." 299 F.3d at 333 (emphasis added). Judge Lackey has no "real responsibility" for any funds, much less federal funds, and he does not participate in their allocation. How then, one asks, could Judge Lackey threaten the integrity of

---

[11] While the *Frega* court's suggestion that there must be a nexus between the bribe and *federal funds* has been implicitly abrogated by the Supreme Court's decisions in *Salinas* and *Sabri*, its holding, its jurisdictional analysis and its discussion of the Tenth Amendment remain good law.

federal funds?  The answer is that he could not.  Federal interference is neither "necessary" nor "proper" here.

The unconstitutionality of applying section 666 to these Defendants is magnified by the fact that bribery of a state official like Judge Lackey is already a crime under Mississippi law. Miss. Code § 97-11-11 (defining public bribery crime and setting ten-year maximum sentence). "When Congress criminalizes conduct already denounced as criminal by the States, courts should be especially wary, because doing so "effects a 'change in the sensitive relation between federal and state criminal jurisdiction.'" *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (quoting *United States v. Enmons*, 410 U.S. 396, 411-12 (1973)); *see also McCormack*, 31 F. Supp. 2d at 187.  As such, "where an interpretation of a federal criminal statute would upset the balance of power between the federal and state governments, Congress must express its intention clearly for a court to adopt that interpretation." *Frega*, 933 F. Supp. at 1540 (citing *United States v. Bass*, 404 U.S. 336, 349 (1971)).

The State of Mississippi is entitled to police its own internal activities without federal intervention. Given how attenuated is the federal interest in this case, and given Congress's failure to explicitly express its intent to criminalize every local act of bribery, the Tenth Amendment demands that section 666 be construed to allow Mississippi the "residuary and inviolable sovereignty" envisioned by our country's federalist scheme. *Printz*, 521 U.S. at 918-19.

## IV.    CONCLUSION

The federal funds bribery statute, section 666, is not limitless.  It is bounded both by the plain language of the statute and by the constitutional barriers of the Tenth Amendment.  When, as here, the Government charges a crime for which, by law, it cannot prove the elements at trial, and when the Government fails to respects the limits of the Constitution and the delicate federal-state balance it embodies, this Court has but one choice.  It must dismiss.

Defendants respectfully request oral argument on this motion.

Respectfully submitted, this 11th day of February, 2008.

Dated:  February 11, 2008                    By:   /s/ John W. Keker
                                                   John W. Keker (*Pro Hac Vice*)
                                                   Jan Nielsen Little (*Pro Hac Vice*)
                                                   Brook Dooley (*Pro Hac Vice*)
                                                   Travis LeBlanc (*Pro Hac Vice*)
                                                   Warren A. Braunig (*Pro Hac Vice*)
                                                   KEKER & VAN NEST, LLP
                                                   710 Sansome Street
                                                   San Francisco, California 94111
                                                   Telephone: (415) 391-5400
                                                   Facsimile:  (415) 397-7188

                                                   *Co-Counsel for Defendant*
                                                   *Richard F. Scruggs*

Dated:  February 11, 2008                    By:   /s/ Frank W. Trapp
                                                   Frank W. Trapp, MSB #8261
                                                   PHELPS DUNBAR
                                                   P.O. Box 23066
                                                   Jackson, Mississippi 39225-3066
                                                   Telephone: (601) 352-2300

                                                   *Co-Counsel for Defendant*
                                                   *Sidney A. Backstrom*

Dated:  February 11, 2008                    By:   /s/ J. Rhea Tannehill, Jr.
                                                   J. Rhea Tannehill, Jr., MSB #10449
                                                   TANNEHILL & CARMEAN, PLLC
                                                   829 North Lamar Boulevard, Suite 1
                                                   Oxford, Mississippi 38655
                                                   Telephone: (662) 236-9996
                                                   Facsimile:  (662) 234-3949

                                                   *Co-Counsel for Defendant*
                                                   *Sidney A. Backstrom*

Dated:  February 11, 2008           By: /s/ Nathan F. Garrett_____

                                    Nathan F. Garrett (*pro hac vice*)
                                    Todd P. Graves (*pro hac vice*)
                                    GRAVES BARTLE & MARCUS LLC
                                    1100 Main St Suite 2600
                                    Kansas City, MO 64105
                                    Telephone:  (816) 256 3181
                                    Facsimile:  (816) 817 0780

                                    *Co-Counsel for Defendant*
                                    *David Zachary Scruggs*

**CERTIFICATE OF SERVICE**

I, Brook Dooley, do hereby certify that I have electronically filed the foregoing **Motion to Dismiss Counts 2, 3 & 4** with the Clerk of the Court using the ECF system, which sent notification for such filing to Thomas W. Dawson, Assistant United States Attorney, Robert H. Norman, Assistant United States Attorney, David Anthony Sanders, Assistant United States Attorney, Frank W. Trapp, J. Rhea Tannehill, Jr., Nathan F. Garrett, and Todd P. Graves.

This, the 11th day of February, 2008.

/s/ Brook Dooley
Brook Dooley

410036.06