# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

## WESTERN DIVISION

UNITED STATES OF AMERICA

v.                                          Case No.: 3:07CR192-NBB-SAA

RICHARD F. SCRUGGS,
DAVID ZACHARY SCRUGGS,
SIDNEY A. BACKSTROM

## DEFENDANTS' SECOND MOTION FOR DISCOVERY
## AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

### I.     INTRODUCTION

Defendants Richard F. Scruggs, David Zachary Scruggs, and Sidney A. Backstrom

hereby move for discovery pursuant to Federal Rules of Criminal Procedure 12, 16 and 26.2,

Federal Rules of Evidence 404(b) and 609, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v.

United States*, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. 3500. Prior to filing the

instant motion, defendants requested the discovery detailed below in a letter to the government

on February 28, 2008. The government, however, has not responded to defendants' request.

Having heard nothing from the government, and with trial now less than three weeks away,

defendants seek relief from the Court.

### II.     ARGUMENT

**A.     The Court Should Order the Government to Produce Documents Identified During
the February 20-21, 2008, Hearing.**

The Court held a hearing on defendants' pretrial motions on February 20 and 21, 2008.

During the hearing, the government called Timothy R. Balducci to testify regarding defendants'

government misconduct motion and called FBI Agent William P. Delaney to offer testimony

related to defendants' *Franks* motion. Pursuant to Rules 12 and 26.2 of the Federal Rules of

Criminal Procedure, the government produced statements of Balducci and Agent Delaney after they testified.

The testimony and statements of Balducci and Agent Delaney reveal the existence of a number of documents material to the defense that the government is still withholding. Defendants wrote to the government on February 28, 2008, to request these documents. *See* Ex. A at 4-6.[1] In the more than ten days since defendants sent their request—and with trial less than three weeks away—the government has not responded. Accordingly, defendants now move the Court to order the government to produce the following documents:

**1. Judge Lackey's "Note on Tim Balducci."**

The FBI 302 report concerning Agent Delaney's first interview with Judge Lackey on April 23, 2007, contains remarkably little about what Judge Lackey told Agent Delaney regarding his March 28, 2007, meeting with Balducci. Instead, the 302 refers to a report that Judge Lackey allegedly wrote on March 28, 2007, and which he entitled "Note on Tim Balducci." *See* Ex. B at 1. The 302 states that Judge Lackey's "Note" is attached. *Id.* However, the "Note" was not attached to the copy produced by the government. Given the significance of the March 28, 2007, meeting and the fact that Agent Delaney's 302 contains almost no detail regarding what Judge Lackey told him about that meeting, the Court should order the government to produce the "Note on Tim Balducci" immediately.

**2. Materials Relating to the Failed Recording of the May 3, 2007, Telephone Call Between Judge Lackey and Balducci.**

Agent Delaney testified at the February 20, 2008, hearing that the government had planned to record the telephone call from Judge Lackey to Balducci on May 3, 2007. However, according to Agent Delaney, the tape recording captured only the preamble to the recording. *See* Ex. C at 131-132. Agent Delaney further testified that he had provided Judge Lackey with a telephone recorder on May 3d, but Judge Lackey opted to use his own recording device. *Id.*

---

[1] All Exhibits are attached to the Declaration of Brook Dooley in Support of Defendant's Second Motion for Discovery filed herewith.

Given these highly unusual circumstances and the importance of this first recorded call from Judge Lackey, the Court should grant defendants the right to inspect: (1) the original tape used by Judge Lackey to record his May 3d phone call; (2) the original tape, if any, that Agent Delaney gave to Judge Lackey on May 3d but which he did not use; (3) the recording equipment given to Judge Lackey to use and the recording equipment he did in fact use; and (4) any other recordings, reports, notes, and/or documents used to compile the 302 report concerning the May 3, 2007 call, including notes prepared by Judge Lackey and notes prepared by Agent Delaney.

**3.      All Reports, Notes, and Documents Related to the Government's May 22, 2007, Meeting with Judge Lackey.**

Agent Delaney testified that, after Judge Lackey sent his recusal letter on May 21, 2007, he met with Judge Lackey the next day.  Agent Delaney testified that he discussed with Judge Lackey his reasons for recusing himself and his "options" at that time.  *See* Ex. C at 120-121; 140-141.  The FBI 302 report prepared by Agent Delaney, however, contains nothing about why Judge Lackey recused himself and nothing about the "options" that Agent Delaney discussed with Judge Lackey.  *See* Ex. D.

Because Agent Delaney's 302 regarding this meeting is plainly deficient, the Court should order the government to produce all other reports, notes, and documents related to the May 22, 2007, meeting between Agent Delaney and Judge Lackey, specifically including Agent Delaney's original notes from that meeting.

**4.      All Reports, Notes, and Documents Related to the Government's November 2, 2007, Interview of Balducci.**

Agent Delaney's Confidential Human Source Reporting Document ("Form 1023") regarding the government's November 2, 2007 interview of Balducci reflects that Balducci told the government that Dick Scruggs specifically told Balducci at their March 2007 meeting that "he was not asking … for anything illegal."  Agent Delaney testified that his rough notes also reflect this statement.  Ex. C at 177:19-178:4.  Nonetheless, Agent Delaney testified that there

had been "some … misunderstanding" between the government and Balducci about this statement. *Id*. at 176:15-16.

Because a question has arisen whether the November 2, 2007, Form 1023 is accurate, it is appropriate to produce the rough notes of the November 2, 2007, interview, which were taken contemporaneously. Moreover, because Agent Delaney testified about these matters, the rough notes are Agent Delaney's "statement" to which defendants are entitled under Rule 26.2 and the Jencks Act. The Court should therefore order the government to produce these documents.

> **5.     Balducci's Desk Calendars.**

The Form 1023 regarding the government's November 7, 2007, interview of Balducci indicates that, in the course of the interview, Balducci produced to the government desk calendars for March, May, and September 2007. Counsel for defendants had previously understood that all documents obtained from Balducci had been provided to defendants, but the government has never produced these calendars. The Court should order the government to produce these documents.

> **6.     Balducci's Telephone Records.**

The Form 1023 regarding the government's November 7, 2007 interview of Balducci also indicates that "[a] copy of [Balducci's] telephone records from 09/21/07 is attached to this report…." The copy of the Form 1023 produced to defendants does not have these telephone records attached. The Court should order the government to produce these documents.

**B.     The Court Should Order the Government to Produce *Brady/Giglio* Material Related to Statements and Testimony of Government Witnesses Regarding the Allegations in the Indictment.**

As noted above, Balducci and Agent Delaney testified at the hearing on defendants' pretrial motions on February 20, 2008, and the government produced a number of their statements after they testified. After the hearing, defendants renewed their request—pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and *Brady v. Maryland*, 373 U.S. 83 (1963)—for all evidence and information which tends to exculpate defendants, which may be favorable or useful to the defense as to either guilt or punishment, which tends to affect the weight or

credibility of evidence to be presented against defendants, or which would impeach government witnesses. *See* Ex. A at 1-4. Defendants specifically requested *Brady* and *Giglio* material related to testimony by Balducci and Agent Delaney at the February 20th hearing and statements made in the Jencks material produced at the hearing. *Id.* The government has not responded to defendants' request. Accordingly, defendants now request that the Court order the government to produce the following material pursuant to *Brady* and *Giglio*.

1.    All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove the statement in the FBI 302 regarding the November 7, 2007, interview of Balducci that the Scruggs Law Firm desired that Judge Lackey enter summary judgment on their behalf and sought Balducci's assistance in obtaining that result.

2.    All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove Balducci's testimony that Dick Scruggs was the one who raised the subject of the *Jones* case during the March 2007 meeting with Balducci and Steven A. Patterson. *See* Ex. C at 45:6-8.

3.    All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove Balducci's testimony that Zach Scruggs "was the first one to bring … up" the idea of Balducci talking to Judge Lackey or Balducci's testimony that Zach "asked if I thought it would be possible for me to go and have an off-the-record conversation with Judge Lackey about the [*Jones*] case and see if I could persuade him to rule in their favor." Ex. C at 32:17-21.

4.    All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to show that Joey Langston asked Balducci to approach Judge Lackey regarding the *Jones* case.

5.    All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove Balducci's grand jury testimony that he was owed $400,000 by Dick Scruggs or the Scruggs Law Firm at the time of the March 2007 meeting.

6.    All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove Balducci's grand jury testimony that, as of March 2007, Patterson & Balducci was going to be asked to assume the Jones Funderburg firm's role in the Scruggs Katrina Group.

7.    All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove Balducci's testimony that, when he first approached Judge Lackey in March 2007, he "knew" that his conduct was "completely unethical" and "knew that by doing so [he] was risking the loss of [his] law license." Ex. C at 29:21-23.

8.    All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove Agent Delaney's testimony that, in Judge Lackey's mind, "there was no question that he had been bribed.  That was the whole crux of this thing."  Ex. C at 130:6-8.  Such evidence or information should include but not be limited to:

- Information about conversations Judge Lackey had with other people after the March 28, 2007, meeting;

- Any notes or memos made by Judge Lackey concerning the March 28, 2007, meeting;

- All notes and memoranda memorializing Judge Lackey's description of the March 28, 2007, meeting; and

- All notes and memoranda concerning Balducci's recollection of the March 28, 2007, meeting.

9.    All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to show that Judge Lackey did not, as represented in Agent Delaney's September 25, 2007, affidavit, call federal authorities "at the conclusion of" the March 28, 2007, meeting but rather waited for days or weeks, including, but not limited to:

- Information from the U.S. Attorney's Office or from DOJ/FBI files showing the date Judge Lackey first contacted the government; and

- Information concerning individuals with whom Judge Lackey spoke about his March 28, 2007, meeting with Balducci between the time of that meeting and his contacting the U.S. Attorney's Office.

10.   All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information concerning any wrongdoing by Judge Lackey or any information about what may have motivated Judge Lackey with respect to his cooperation with the federal government, including but not limited to evidence and information concerning:

- Judge Lackey's business relationships with persons convicted of crimes;

- Judge Lackey's *ex parte* communications with other lawyers regarding cases before him at the time of the communications;

- Judge Lackey's past involvement in corrupt overtures; and

- Judge Lackey's receipt of monetary and non-monetary things of value including money, business services, tangible items, loans, forgiveness of loans, or favors in exchange for favorable rulings.

11.   All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove Agent Delaney's testimony that Judge Lackey decided on his own to recuse himself from the *Jones* case.  *See* Ex. C at 120:14-17; 153:11-12.

12. All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove Agent Delaney's testimony that he did not demand that Judge Lackey withdraw his letter of recusal from the *Jones* case. *See* Ex. C at 121:20-21.

13. All information tending to contradict or disprove Agent Delaney's testimony that it was Judge Lackey's idea to ask Balducci for a monetary payment. *See* Ex. C at 147:19-148:5.

14. All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove Balducci's testimony that he had a conversation with Sidney A. Backstrom in September 2007, about Judge Lackey's demand for $40,000. Ex. C at 76:3-9; 77:25-78:4.

15. All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to show that the Balducci, Patterson, and/or the Patterson & Balducci firm was suffering from financial difficulties.

16. All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to show that Balducci, Patterson, or the Patterson & Balducci firm worked on voir dire or jury instructions for the Scruggs Law Firm in October or November 2007, including, but not limited to:

    • Invoices;

    • Time sheets;

    • Physical files or documents;

    • Legal research; and

    • Information about conversations with defendants or other employees of the Scruggs Law Firm about voir dire or jury instructions.

17. All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information concerning Balducci's November 19, 2007, trip to the Scruggs Law Firm offices, including any recordings, reports, notes, or other documents relating to this incident.

18. All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to show that Balducci, Patterson, or Patterson & Balducci had previously asked defendants or other members of the Scruggs Law Firm to assign them work in exchange for monetary payments.

19. All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information concerning phone calls between Judge Lackey and Balducci between March 2007 and November 2007 that were not recorded, including all information concerning calls between Judge Lackey and Balducci made or received on Judge Lackey's cellular and home

telephones and all information concerning calls made or received on Balducci's office or home telephones.

20. All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to show that between March 2007 and September 2007, Balducci did not call or otherwise initiate contact with Judge Lackey.

**C. The Court Should Order the Government to Produce Rule 16 Material Related to the Allegations Regarding *Wilson v. Scruggs*.**

On February 26, 2008, the Court denied defendants' motion to prohibit the introduction of evidence regarding the *Wilson v. Scruggs* case pursuant to Federal Rule of Evidence 404(b). On February 28th, defendants requested that the government produce all Rule 16 material related to the allegations regarding *Wilson v. Scruggs*. *See* Ex. A at 6-7. The government has not responded to defendants' request. Defendants now move that the Court order the production of all Rule 16 materials related to the government's allegations that Dick Scruggs and Zach Scruggs were involved in an attempt to corruptly influence Judge Bobby DeLaughter in connection with *Wilson v. Scruggs*. More specifically, the Court should order the government to produce:

1. All records, reports, memoranda, notes or other writings that contain the substance of any oral statement, related to the allegations regarding *Wilson v. Scruggs*, that was made by defendants to government agents, attorneys, or investigators or persons working for or on behalf of the government, such as Senators Thad Cochran or Trent Lott. *See* Fed. R. Crim. P. 16(a)(1)(A).

2. All records, reports, memoranda, notes or other writings that contain the substance of any oral statement made by defendants to persons who have assisted the government in conducting an investigation in contemplation of or in furtherance of cooperating with or providing information with respect to an alleged attempt to corruptly influence Judge DeLaughter, including, but are not limited to, Balducci, Patterson, Joseph C. Langston, Ed Peters, and Judge DeLaughter. *See id*.

3. The substance of all oral statements, related to the allegations regarding *Wilson v. Scruggs*, that were made by any defendant to government or law enforcement authorities which have not been disclosed and which the government may use at trial, including any relevant statements made to Senators Cochran and Lott, including not only statements which the government intends to introduce at trial, but also statements which the government may use for impeachment or other purposes. *See* Fed. R. Crim. P. 16(a)(1)(A).

4. The name and whereabouts of any government agent or witness who has had contact with any defendant about the allegations regarding *Wilson v. Scruggs* but

who has not been interviewed to determine whether any defendant made statements in his or her presence.

5.    All statements allegedly made by any alleged co-conspirator of defendants in furtherance of the alleged conspiracy to corruptly influence Judge DeLaughter, whether those statements are written, oral, or recorded.

6.    All physical tangible evidence related to the allegations regarding *Wilson v. Scruggs* which the government intends to use in its case in chief.  *See* Fed. R. Crim. P. 12(b)(4), 16(a)(1)(E).

7.    Copies of all books, papers, documents, including electronic data, and photographs which are material to the preparation of the defense of the allegations regarding *Wilson v. Scruggs* or which are intended for use by the government at trial or which were obtained from or belong to defendants.  *See* Fed. R. Crim. P. 16(a)(1)(E).

8.    A description of all tangible objects, buildings, or places which are material to the preparation of the defense of the allegations regarding *Wilson v. Scruggs* or which are intended for use at trial or which were obtained from or belong to defendants. *See* Fed. R. Crim. P. 16(a)(1)(E).

9.    Copies of all books, papers, documents, including electronic data, and other objects in the government's control that were obtained from any alleged co-conspirator who was involved in an attempt to corruptly influence Judge DeLaughter.

10.   All documents, including electronic data, relating to the investigation of the Judge DeLaughter allegations which were produced to any branch of the government by a third party, including, but not limited to, Balducci, Langston, Patterson, Peters, Judge DeLaughter, and former Senator Lott and persons working for or on behalf of them.

**D.    The Court Should Order the Government to Produce *Brady/Giglio* Material Related to the Allegations Regarding *Wilson v. Scruggs*.**

After the Court denied defendants' motion to prohibit the introduction of evidence regarding the *Wilson v. Scruggs* case, defendants also requested that the government produce all *Brady* and *Giglio* material related to the allegations regarding the *Wilson* case.  *See* Ex. A at 7-9. The government has not responded to defendants' request.

Pursuant to *Brady* and *Giglio*, defendants now request that the Court order the government to produce all documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, and other evidence and information which tends to exculpate defendants of the allegations regarding *Wilson v. Scruggs*, or which may be favorable or useful to the

defense as to either guilt or punishment, which tends to affect the weight or credibility of evidence to be presented against defendants, or which would impeach government witnesses. *See Giglio*, 405 U.S. at 150; *Brady*, 373 U.S. at 83.

In addition, defendants request that the Court order the government to produce the following specific evidence and information:

1. The statements of all persons having relevant information about the allegations regarding *Wilson v. Scruggs*, whether such statements are sworn or unsworn, whether or not the government believes in the credibility of the statement, that are exculpatory and helpful to the defense, including, but not limited to:

   • Statements that are exculpatory and helpful to defendants;

   • The names of all people whom the government asked whether they would and/or could implicate defendants in any criminal wrongdoing and who would not and/or could not so implicate defendants; and

   • The names and statements of all people whether indicted or not who have confessed to acts that form the basis for the indictment.

2. A detailed description of all discussions of potential criminal or civil liability, or the potential consequences of same, or the potential resolution or avoidance of same, or any discussion of or promises or grants of immunity, lenience, financial assistance, or any other assistance to any person the government intends to or may call as a witness or upon whose statements the government will or may rely, including, but not limited to:

   • Any help or promise to help the witness in his profession or business or any promise not to jeopardize his profession or business;

   • Any help or promises of help (including but not limited to money and leniency) given to such person for his work, information, or testimony in this case or any other case; and

   • All correspondence, email, or notes of conversations between attorneys or agents of any branch of the U.S. Government (including the U.S. Senate), on the one hand, and any potential government witness or cooperating person or entity or counsel therefor, on the other hand, regardless of whether such potential witness or cooperating person or entity will in fact testify for the government.

3. A detailed description of any situation where a prosecution witness could be named as a defendant or co-conspirator in this or any other case but has not as yet been charged, and any threat to charge or prosecute this witness or promise not to charge or prosecute the witness. *See Giglio*, 405 U.S. at 150; *United States v. Sutton*, 542 F.2d 1239, 1242 (4th Cir. 1976); *United States v. Gerrard*, 491 F.2d 1300, 1304 (9th Cir. 1974).

4. With respect to government witnesses who may testify about the allegations regarding *Wilson v. Scruggs*, any and all information relevant to the credibility of

those witnesses and which may be used as the basis for impeachment of such witnesses, including, but not limited to:

- Evidence of prior convictions;

- Evidence of past or ongoing criminal conduct which has not been prosecuted but of which the government is, or should with reasonable diligence be, aware;

- Evidence of any professional misconduct or disciplinary infractions;

- Any and all benefits provided by the government to the witness or members of his or her family, including any benefits conferred pursuant to the Witness Security Reform Act of 1984;

- Instances, including amounts and dates, of payments made to, or on behalf of, the witness or members of his or her family for any purpose, including rewards, subsistence, salary, commissions, housing, medical and dental treatment, as well as treatment for counseling and substance abuse;

- Any information suggesting that the witness is mentally ill or has in the past suffered from or been treated for mental illness;

- Instances of intervention by the United States, or other law enforcement agencies, on the witness's behalf with local, state, federal or foreign police, prosecution, regulatory, correctional or paroling authorities;

- Any cooperation agreements; and

- Instances where the witness has made prior statements—whether currently reduced to writing or not—which are inconsistent with later statements or the witness's anticipated trial testimony.

The Court should further order the government to preserve all rough interview notes of potential witnesses, including any such notes prepared by state or federal agents, attorneys or regulatory authorities, for potential disclosure under *Brady* or the Jencks Act, 18 U.S.C. § 3500. *See United States v. Bagley*, 473 U.S. 667 (1985); *Giglio*, 405 U.S. at 150.

5. All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove Balducci's testimony that Dick Scruggs bribed Judge Bobby DeLaughter. *See* Ex. C at 86:18-21.

6. All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove Balducci's testimony that he "was directly involved in the conversation between" Dick Scruggs and Langston "where they were discussing [Senator Lott's alleged call to Judge DeLaughter], where they discussed that the call would be made; and then I was privy to conversations after the call was made." Ex. C at 87:18-21.

7. All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or

disprove Balducci's testimony that "I was privy to several meetings with Ed Peters where we discussed strategies about the [Wilson] case, where we previewed filings in the case, where we were provided with draft copies of orders that Judge DeLaughter was going to enter in the case." Ex. C at 89:4-8.

8.      All documents, books, papers, photographs, tests or experiments, objects, statements of witnesses, or other evidence or information tending to contradict or disprove the allegation that Langston communicated or was asked to communicate to Peters or Judge DeLaughter that Scruggs could have Judge DeLaughter considered for a federal judgeship on the condition that Judge DeLaughter rule in favor of Scruggs in *Wilson v. Scruggs*.

### III.      CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court order the government to produce forthwith the discovery described above.

Respectfully submitted, this the 11th day of March 2008.

Dated:  March 11, 2008                    By:   /s/ John W. Keker
                                                          John W. Keker (*Pro Hac Vice*)
                                                          Jan Nielsen Little (*Pro Hac Vice*)
                                                          Brook Dooley (*Pro Hac Vice*)
                                                          Travis LeBlanc (*Pro Hac Vice*)
                                                          Warren A. Braunig (*Pro Hac Vice*)
                                                          KEKER & VAN NEST, LLP
                                                          710 Sansome Street
                                                          San Francisco, California 94111
                                                          Telephone: (415) 391-5400
                                                          Facsimile:  (415) 397-7188

                                                          *Counsel for Defendant*
                                                          *Richard F. Scruggs*

Dated:  March 11, 2008                    By:   /s/ Frank W. Trapp
                                                          Frank W. Trapp, MSB #8261
                                                          PHELPS DUNBAR
                                                          P.O. Box 23066
                                                          Jackson, Mississippi 39225-3066
                                                          Telephone: (601) 352-2300

                                                          *Co-Counsel for Defendant*
                                                          *Sidney A. Backstrom*

Dated:  March 11, 2008      By:   /s/ J. Rhea Tannehill, Jr.

J. Rhea Tannehill, Jr., MSB #10449
TANNEHILL & CARMEAN, PLLC
829 North Lamar Boulevard, Suite 1
Oxford, Mississippi 38655
Telephone: (662) 236-9996
Facsimile:  (662) 234-3949

*Co-Counsel for Defendant*
*Sidney A. Backstrom*

Dated:  March 11, 2008      By:   /s/ Todd P. Graves

Todd P. Graves (*Pro Hac Vice*)
Nathan F. Garrett (*Pro Hac Vice*)
GRAVES BARTLE & MARCUS, LLC
100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone: (816) 256-3052
Facsimile:  (816) 817-0780

*Counsel for Defendant*
*David Zachary Scruggs*

## CERTIFICATE OF SERVICE

I, Brook Dooley, do hereby certify that I have electronically filed the foregoing **Defendants' Second Motion for Discovery and Memorandum of Points and Authorities in Support Thereof** with the Clerk of the Court using the ECF system, which sent notification for such filing to Thomas W. Dawson, Assistant United States Attorney, Robert H. Norman, Assistant United States Attorney, David Anthony Sanders, Assistant United States Attorney, Frank W. Trapp, J. Rhea Tannehill, Jr., Todd P. Graves and Nathan F. Garrett.

This, the 11th day of March, 2008.

/s/ Brook Dooley
Brook Dooley