```
1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF MISSISSIPPI
2

3   UNITED STATES OF AMERICA        .        Cause No. 3:07CR192
                                    .
4            Plaintiff              .        Oxford, Mississippi
                                    .        June 27, 2008
5               v.                  .        10:00 a.m.
                                    .
6   RICHARD F. "DICKIE" SCRUGGS     .
                                    .
7            Defendants             .
    . . . . . . . . . . . . . . . . .
8

9         SENTENCING AS TO COUNT 1 OF THE INDICTMENT
            BEFORE THE HONORABLE NEAL B. BIGGERS
10                U.S. SENIOR DISTRICT JUDGE

11  APPEARANCES:

12

    For the Government:      United States Attorney's Office
13                           Northern District of Mississippi
                             BY:  THOMAS W. DAWSON, ESQ.
14                           BY:  ROBERT H. NORMAN, ESQ.
                             BY:  DAVID A. SANDERS, ESQ.
15                           900 Jefferson Avenue
                             Oxford, Mississippi  38655-3608
16
    For the Defendant
17       Richard F. "Dickie" Scruggs:
                             JOHN W. KEKER, ESQ.
18                           BROOK DOOLEY, ESQ.
                             WARREN A. BRAUNIG, ESQ.
19                           Keker & Van Nest, LLP
                             710 Sansome Street
20                           San Francisco, California 94111-1704

21

    Court Reporter:          Rita Davis Sisk
22                           911 Jackson Avenue, Room 369
                             Oxford, Mississippi  38865
23                           (662) 281-3027

24

    Proceedings recorded by mechanical stenography, transcript
25  produced by computer.
```

1     (CALL TO ORDER OF THE COURT)

2          **THE COURT:** Gentlemen, I assume that both sides are

3   ready to proceed in this matter of *U.S. v. Scruggs*. Are you

4   ready, Mr. Keker?

5          **MR. KEKER:** Yes, Your Honor.

6          **THE COURT:** All right. Mr. Dawson?

7          **MR. DAWSON:** We are, Your Honor.

8          **THE COURT:** Very well. The first thing I am going to

9   do is to get these sentencing guidelines out of the way. And,

10  of course, the defendants have filed a memorandum, a memorandum

11  objecting to some parts of the presentencing report. And the

12  Government has responded to those objections.

13   I've read them all. The memorandum and briefing is very

14  thorough. The points of law and objections to some of the

15  factual allegations are there. I'm prepared to rule on those

16  objections without any oral argument. If you wish to have any

17  oral argument, Mr. Keker, I'll give you a little time to talk

18  about it.

19         **MR. KEKER:** Your Honor, we're prepared to have you

20  rule. I think we've briefed them, as you say, thoroughly. But

21  I wanted to thank the probation office for their courtesy and

22  consideration. We may disagree with them a lot about a lot of

23  those points, but they certainly treated us fairly. And, so,

24  we're ready to have you rule on them.

25         **THE COURT:** Very well.

1          **MR. KEKER:** If you'd like to hear argument about any

2  particular part, I'm prepared; but I don't think it matters so

3  much for this sentencing. It may matter for some others. And

4  that's kind of the -- one of the reasons that we were so

5  anxious to put in what we thought was the accurate part of the

6  record because it may affect some other people more than it

7  affects Mr. Scruggs.

8          **THE COURT:** All right. I appreciate that. What does

9  the Government say about it?

10          **MR. DAWSON:** If the Court please, summarily, we would

11  also not feel the need for any argument. However, we would

12  like to offer into evidence, as we previously indicated to the

13  clerk, two exhibits. They're on the table there. We've

14  provided copies to opposing counsel and advised them earlier

15  that we would be offering these documents.

16          They are the *Jones v. Scruggs* initial suit, that's Exhibit

17  No. 1, along with the attachments, which is the SKG agreement.

18  And Exhibit 2 is a March the 6th, 2007, letter from the Scruggs

19  Law Firm to Mr. Jones and his firm concerning the splitting of

20  the fees and positions that they would take; and that was sent

21  to them nine days before the lawsuit was filed that gave rise

22  to this crime. So --

23          **THE COURT:** Well, I may -- you're talking about

24  exhibits and so on. If you're going to introduce them, I'd

25  have to stop and read them. If you want to -- there is a

1   pretty serious question about -- in the formulation of the

2   guidelines about the expected benefit that the defendant was

3   looking at when he wanted to -- when he bribed Judge Lackey to

4   send this case to arbitration rather than dispose of it in

5   circuit court in Lafayette County.

6       And of course, the perceived or the expected or intended

7   benefit is a fact on which the guidelines are partially based.

8   So if you're going to offer exhibits, I'd just as soon you tell

9   me what your argument is on that issue.

10          **MR. DAWSON:**  All right, sir.  And in addition to

11  that, we also would like to ask the Court to take judicial

12  notice of its files and records, the pleadings, the

13  attachments, the testimony, and hearings that have gone on in

14  the pretrial phase of this case, including the guilty plea.  In

15  other words, the Court would have before it all that was

16  necessary to consider.

17      Now, the two exhibits that I've referred to do nothing

18  more than augment the figures that are in the presentence

19  report concerning the evaluation of the intended loss.  So to

20  that extent, there is nothing new except that it does augment

21  and corroborate the figures that are used by the presentence

22  report in the calculations --

23          **THE COURT:**  You mean you're telling me these exhibits

24  are just duplicative of what's already in the presentence

25  report?

1          **MR. DAWSON:**  They corroborate the presentence report,

2   Your Honor.

3          **THE COURT:**  Okay.

4          **MR. DAWSON:**  It was not clear to us that the

5   presentence report actually had the lawsuit from which they

6   said, for example, that the basis of the lawsuit was -- or the

7   corpus of the lawsuit was $26.5 million.  So I just wanted to

8   make sure that that was in the record.

9          **THE COURT:**  Well, I'm prepared to, you know, rule on

10  the objections based on what I've already read in the reports.

11         **MR. DAWSON:**  Yes, sir.

12         **THE COURT:**  And if that's agreeable to both the

13  defendant and the Government, I'm ready to do that.

14         **MR. DAWSON:**  Yes, sir.  Thank you.

15         **THE COURT:**  All right.  Of course, the intended

16  benefit at issue is an interesting issue; but to some extent,

17  it's a distinction without a difference.  Because in

18  calculating the guidelines, the Court -- as counsel well

19  knows -- can consider either the amount of the bribe, in this

20  case, that was paid, $50,000 -- 40,000 actually delivered and

21  $10,000 more written, transferred to Balducci to supposedly

22  give to Judge Lackey.

23      Or on the other hand, which is preferable, is to calculate

24  the benefit that the defendant expected to receive as a result

25  of the bribe.  And this case is really not about so much the

1    amount of money that was given to Judge Lackey, state circuit

2    court judge; but it's about the effect of that bribe, of what

3    the purpose of it was, to corrupt the ruling and the actions of

4    the circuit court.

5         The Government is arguing that the benefit -- perceived

6    benefit is somewhere around $4 million because that is

7    approximately the difference between the amount of money that

8    Jones had been offered by Mr. Scruggs and the amount of money

9    that was sued for, the difference is approximately $4 million.

10        So the Government has argued that that is the -- that is

11   the amount of the -- that should be considered in calculating

12   and arriving at the presentence -- at the perceived benefit.

13        And on the other hand, the defendant is objecting to that

14   and argues that $50,000, the amount of the bribe, should be

15   considered because the amount of the benefit that would have

16   been obtained by transferring to arbitration is not easily or

17   accurately calculated for the reason that there's no way to

18   know for sure what would have happened if the case had been

19   left in circuit court.  There's no way to know for sure what

20   would have happened if it had gone into arbitration.  So the

21   defendant argues that we should fall back on the amount of the

22   bribe.

23        Well, that is -- would be an easy way to look at it, just

24   take the $50,000 and take that as the amount that would be used

25   in calculating the guidelines.  The Court does not feel that

1    $50,000 is -- is a reasonable figure to use in calculating the

2    seriousness of this crime.  And there's no doubt that the

3    defendant in this case expected and perceived more than a

4    $50,000 benefit when he went to the extent to pay $50,000 and

5    risked prison time to get the case transferred to arbitration.

6         That wouldn't make since.  It was worth a lot more than

7    $50,000 to the defendant to get that done.  It's obvious he did

8    not want his case heard by a local jury.  He wanted it heard by

9    arbitrators that would be picked from a national arbitration

10   board.  And to do that, he was willing to risk conviction,

11   prison, loss of his license, to take it out of circuit court

12   into the field of arbitration.

13        So based on that, the benefit that the defendant intended

14   to receive, in this Court's opinion, was high.  And of course,

15   the law is clear that the defendant -- I mean, that the Court

16   is not burdened with the responsibility of determining exactly

17   what the benefit was.  The guidelines are basically -- are

18   basically the same whether the benefit was $50,000 or $70,000;

19   and then it jumps up to 120.

20        If -- just taking the $50,000, the guidelines go up from

21   46 to 57 months.  If you just jump from 50 to 70, the

22   guidelines are 57 to 71 months.  So it really -- it makes no

23   difference as far as the guidelines are concerned, as far as

24   this case is concerned, whether the Court considers $50,000 or

25   $100,000 or 4 million.

1      The Court is limited by this plea agreement and this plea

2   to 60 months, regardless of what the guidelines are.  And, so,

3   to go through the exercise of calculating the guidelines, which

4   the Court does in all criminal cases in determining sentence,

5   the Court is going to calculate the guidelines in this case

6   based on a $400,000 perceived benefit to be gained by the

7   defendant.

8      That's kind of the figure that I think nobody could argue

9   with as being too high.  Or if it was any lower than that, it

10  would make no difference what the guidelines are; so the Court

11  is going to use that amount in calculating the guidelines,

12  along with the criminal history and the other factors that are

13  used.

14     There are other objections; and basically, they fall into

15  three categories.  The defendant's perceived benefit expected

16  falls into the category of Mr. Scruggs' role in the offense,

17  whether he was a leader or not, and whether there are five or

18  more people involved in this -- participating in this scheme to

19  bribe.  The Court overrules those objections.

20     The Court finds that there were five or more people

21  involved.  The defendants question whether Zack Scruggs is one

22  of the five.  The Court finds that, although he has not been

23  convicted or pled guilty as a conspirator, the statute does not

24  require a conspirator -- five people to be conspirators.  The

25  statute requires that at least five be participants in aiding

1  in the crime in some way.

2     And the Court finds that Zach Scruggs was a participant.

3  He looked at the order, proposed order, made comments on it

4  before it was to be submitted to Judge Lackey; and he was there

5  when this scheme first started.  Some people have called that

6  first meeting a scheme to earwig.  Some have called it the

7  first part of the conspiracy.

8     But whatever it was, when the defendant and these others,

9  Zach Scruggs and Mr. Backstrom and Mr. Patterson and

10 Mr. Balducci, got together for the purpose of sending Balducci

11 over to talk to Judge Lackey, in this Court's mind, that was

12 the starting of the scheme to corrupt the integrity of the

13 Lafayette County Circuit Court.

14    Whether money was talked about or whether it was a job

15 that was talked about, a monthly stipend to have your name on

16 the letterhead was talked about, they were sending somebody who

17 was not a lawyer in the case over to see a judge to try to

18 persuade him to rule in favor of Mr. Scruggs for whatever

19 reason.  And the Court finds that there were five or more

20 people and that was the attempt -- the start of the scheme to

21 corrupt.

22    There's no doubt in the Court's mind that Mr. Scruggs,

23 Mr. Richard Scruggs, was a leader and a planner.  He says he

24 came into the scheme late; but regardless of when he came into

25 it, he was the money man.  He's the man that wrote the checks.

DAILY COPY

1    When Balducci went -- the record shows when Balducci went

2  to see Judge Lackey and Judge Lackey brought up words to the

3  effect of "instead of a job, what about some money; are you

4  willing do that, Balducci said yes and thought he could.

5    But the record shows that he immediately left Judge

6  Lackey's office and called the Scruggs Law Firm.  And he's

7  testified he asked to talk to Backstrom.  He asked to have

8  permission -- or asked Backstrom what he thought about this

9  money instead of -- supplying money.  Backstrom said he'd have

10 to get back with him.  And he got back with him and said no

11 problem.

12   So the Court concludes that Backstrom -- I don't think --

13 that Backstrom didn't make that decision on his own.  Or else

14 he could have told him right then; he wouldn't have had to get

15 back with him.  So there's ample evidence to show, and the

16 Court finds, Mr. Scruggs was a planner and a leader in this

17 affair.

18   Now, the defendants have also objected to the inclusion in

19 the presentence report of the 404(b) evidence that was

20 presented involving the testimony of certain persons, including

21 Joey Langston, Scruggs' former lawyer and friend; and also,

22 Balducci and Patterson; that they were part of another case in

23 which they bribed a judge, corrupted a judge, in another case

24 in another court.

25   And they have -- the defendants object to that being

1  included in the presentence report.  The Court is going to

2  sustain that objection and order it stricken from the court

3  because it does not -- or is irrelevant to the computation of

4  the guidelines in this case.

5      And that's something the defendant will probably have to

6  answer to later.  It's not going to be a matter that the Court

7  is going to consider in this case.  The other objections will

8  be overruled.  The defendants have asked for certain lines --

9  individual lines in the presentence report to be deleted and

10  some new lines added.  Those matters do nothing -- they do

11  nothing that would aid the Court in determining the guidelines,

12  so those are also overruled.

13      And based on these considerations, the Court has

14  calculated the guidelines to be, as I said, slightly over

15  60 months, at the low end of the money figure, and will base

16  the sentence on that.

17      The guidelines in this circuit are used to start off as

18  the presumptively reasonable basis of a sentence.  In the ninth

19  circuit, Mr. Keker's home court, the guidelines are not

20  considered that important; they're one factor along with many

21  others that the courts consider.  In this circuit, the rule is

22  that the guidelines are considered the presumptively correct

23  sentence and to go up or down from there requires a good

24  reason.

25      Let's see.  I may have left those guidelines back in the

1   back.  Do you have a copy of it, Mr. East?

2           **MR. EAST:**  (Passing document.)

3           **THE COURT:**  The Court finds in this case, therefore,

4   that the offense level -- using a $400,000 perceived benefit,

5   which I said is probably low, the offense level is 31.  The

6   defendant has a criminal history category of one, which shows

7   no previous criminal convictions.

8       Under the guidelines, it calls for an imprisonment range

9   of 108 to 135 months.  Of course, in this case, the defendant

10  is -- sentence will be restricted to a maximum of 60 months.

11  And the guidelines call for a supervised release range of two

12  to three years, and a fine range of 15,000 to 150,000 dollars.

13      The Court does find in these circumstances, in this case,

14  there is a reason to depart upward in the fine range.  The

15  Court is still limited by the $250,000 maximum under the

16  statute.  But for the purpose of requiring the defendant to pay

17  his own costs of incarceration, the Court will depart upward

18  from the $250,000 guideline range and impose upward from that

19  standpoint for the purpose of providing that the defendant will

20  pay his own costs of incarceration.

21      Now, with that done, I appreciate counsel not going into a

22  long argument, because the Court -- I think the record has been

23  made very clearly by counsel for both defendant and the

24  Government as to what the law is regarding these guideline

25  ranges and what the findings of fact are and what the

**DAILY COPY**

1  conclusions of law are.  All right.

2     Even though it may be a moot point, there's some question

3  in the Court's mind -- the Court is -- the presentence report

4  gave the defendant credit for three points for acceptance of

5  responsibility based on some matters that have been brought to

6  the Court's attention.  The Court would like to inquire into

7  that.

8     Is there anything else before we -- before I ask the

9  defendant and Mr. Keker and the Government if you have any

10  statement to make to the Court, before we get into that;

11  anything else we need to take up?

12          **MR. KEKER:**  No, Your Honor.

13          **MR. DAWSON:**  No, Your Honor.

14          **THE COURT:**  All right.  Okay.  Then, Mr. Keker, let

15  your client come up before the Court.

16          **MR. KEKER:**  You want me up here with him, Your Honor?

17          **THE COURT:**  Yes, sir.

18     (Parties complying.)

19          **THE COURT:**  All right, Mr. Scruggs, of course, this

20  is a very unpleasant duty for me this morning; but it's

21  certainly one that needs to be performed.  Is there anything

22  you wish to state to the Court prior to sentencing?

23          **THE DEFENDANT:**  There is, Your Honor.

24          **THE COURT:**  All right.  You may do so.

25          **THE DEFENDANT:**  If I may.  I could not be more

1 ashamed than to be where I am today, mixed up in a judicial

2 bribery scheme that I participated in. I realized that I was

3 getting mixed up in it. And I will go to my grave wondering

4 why.

5     I have disappointed everyone in my life, my wife, my

6 family, my son, particularly; my friends, many of whom were

7 kind enough to come up today and to write to the Court. I

8 deeply regret my conduct. I'm sorrowful for it. It is a scar

9 and a stain on my soul that will be there forever. And I thank

10 you for letting me speak to the Court.

11     **THE COURT:** Mr. Keker?

12     **MR. KEKER:** I -- just briefly, Your Honor. It is

13 certainly a grim moment. And on a personal level, I have not

14 known Dick Scruggs that long, but I have come to admire him and

15 like him and believe that he is the man that's described in

16 these letters; and that this conduct is not Dick Scruggs.

17     I think it would take a Falkner or a Walker Percy to

18 understand how people -- how these kinds of things happen. But

19 there's a passivity about Dick Scruggs in this instance that I

20 think I'm beginning to understand, but I just don't understand

21 it about how it all happened.

22     He has fallen about as far as a man can fall. I think you

23 heard he recognizes that. It's just -- it's terribly

24 upsetting. The only thing I'm asking you for is something that

25 we've talked about with the Government before when we were

1  doing this.  It's not part of the agreement, but they told me

2  they wouldn't object to these requests.

3      And one of them is, for medical reasons, for family

4  reasons, for reasons of just letting him get settled down

5  rather than shuttled around, we would ask that he self -- that

6  you let the Bureau of Prisons designate a place for him to go,

7  and he self report to that.  So we're asking that that happen

8  rather than he be put into custody today.

9      And the second thing that we're asking for is 30 days to

10  get the money for the fine together.  We heard what you said;

11  we expect it to be a $250,000 fine.  But that can be paid, but

12  we'd like 30 days.

13      And the third thing that I would ask for is that you

14  recommend to the Bureau of Prisons -- recognizing, as we all

15  do, that they're not bound by anything that you recommend --

16  but that you recommend the camp at Pensacola, which is a place

17  that would make it easier for Mrs. Scruggs to visit him because

18  she has relatives nearby and friends nearby; and it would be a

19  lot easier.  So we're asking for that recommendation.

20      Those are the three things, self-surrender, 30 days to pay

21  the fine, and recommendation of the camp at Pascagoula --

22  excuse me -- Pensacola.  I don't know why I keep saying that.

23  That's all I have, Your Honor.

24          **THE COURT:**  All right.  Well, I -- they sound

25  reasonable, although I question why you need 30 days to get up

1    the $250,000 when it's in your checking account but --

2            **MR. KEKER:**  There's actually cash flow issues that I

3    can explain to you if you wanted me to.  But the money you've

4    heard about comes in somewhat regularly, and I've been told

5    that 30 days would be --

6            **THE COURT:**  Okay.  All right.  Mr. Dawson, anything

7    you wish to add for the Government?

8            **MR. DAWSON:**  Very briefly, Your Honor.  Only that the

9    difficulty that we all feel with this case from day one has

10   always been the nature of the offense as Mr. Scruggs has

11   acknowledged.  Beyond that, we believe that the sentencing is

12   entirely within the discretion of the Court, and we would not

13   undertake to comment further.

14           **THE COURT:**  Very well.  Well, this has gone a lot

15   quicker than I thought it would and I was prepared for it to

16   go, and I appreciate counsel allowing that to happen.  As I

17   said, Mr. Scruggs, this is a very unpleasant duty for me.  But

18   you're not the first person within your means and stature and

19   professional standing who's stood where you stand now, having

20   been convicted of felonious criminal conduct.

21           And -- because I've had -- I've had the unpleasant duty

22   before to sentence lawyers to prison, also doctors, and also

23   ministers of the gospel, business executives, owners of

24   businesses, bankers, not only bank tellers but bank presidents.

25           So it's all -- it's all been very unpleasant and very

1    unusual.  But your case, I believe, is the saddest of any of

2    these others that I've just mentioned.  And it's the saddest

3    because these other cases, every one of them, these bankers and

4    lawyers and doctors, all thought they needed money or they did

5    need money.  And they were willing to risk their freedom and

6    their profession to get some money.

7        And yet you -- you neither thought you needed money or did

8    need money; yet you committed a reprehensible crime which, in

9    my opinion, is one of the most reprehensible crimes that a

10   lawyer can commit, the corruption of the rule of law which he's

11   sworn to uphold.

12       And you did that just to give yourself a better position

13   in a lawsuit than you would have gotten had you not done it.

14   Or you thought you were giving yourself a better position.

15   It's -- as you say, I don't know why you did it.  I don't know

16   what your motives were in choosing to commit this crime.

17       I've heard it described by some that it was greed.  I've

18   heard some describe and say it was avarice.  I've heard some

19   say that you did it simply because you thought you could, that

20   you'd done it before and you thought you could do it -- and you

21   felt you could do it again.  And I'm going to leave it up to

22   others to ascribe to you the motive that you had in your mind

23   when you chose to do it.

24       I do not have to know why you done it; I just have to know

25   that you did it.  And there's no doubt that you did it.  I've

1    heard the tapes.  I've heard you say you did it.  One of the

2    worst crimes a lawyer can commit.  You took an oath -- I'm not

3    going to read the oath, but I did get it out to see the oath

4    and read the oath that you took as an officer of the Court.

5           And you solemnly swore that you would demean yourself as

6    an attorney which gave you the privilege of practicing before

7    the Court.  You had the authority as an attorney, as a member

8    of the bar, to do powerful things.  You could subpoena people.

9    You could issue subpoenas to come and be -- for people to be

10   taken up and brought in and placed somewhere.

11          You had the ability to -- the power to file suits against

12   persons.  You didn't have to get permission from anybody; you

13   could just file.  But you said that you would demean yourself

14   as an attorney and counsel of the Court to the best of your

15   learning and ability, that you will not use your authority as a

16   member of the bar for the purpose of perpetrating any falsehood

17   for money.  That you will support the Constitution of the

18   United States as long as you continue a citizen thereof, so

19   help you God.

20          Well, you've not only attempted to corrupt the Court, you

21   violated that oath.  Now, to me, that is more serious than a

22   man on the street bribing a judge.  Because the man on the

23   street, a party, for example, who comes into court and has a

24   case in the court and tries to bribe a judge is not as serious

25   as a lawyer trying to bribe a judge, because the man on the

1   street hasn't taken an oath; the lawyer has.

2       And I personally was shocked when I first learned about

3   this situation with you and your law partners.  I was shocked

4   as I learned the evidence as it developed.  And when I saw

5   how -- when you were approached with this scheme, I saw how

6   easily and quickly you entered into it.  And it made me think

7   that this, perhaps, is not the first time you've done it

8   because you did it so easily.  You didn't really take time to

9   think about it.

10      And there is evidence before the Court that you have done

11  it before.  So -- but I'm not considering that as other

12  evidence, as I said, in your case.  That's something that

13  will -- I have no doubt is being looked at, at this time.

14      You attempted to bribe Judge Lackey.  You found out that

15  Judge Lackey is not a man to bribe.  You picked the wrong man

16  to try to bribe.  Another thing that doesn't make any sense --

17  well, it makes your crime more reprehensible is the justice

18  system has made you a rich man; the court system has made you a

19  rich man.  And yet you have attempted to corrupt it.

20      And I received these letters from your friends about how

21  sentencing would affect you and your wife and your daughter,

22  and I have sympathy for you in that respect.  Your wife, I

23  understand, is a fine lady; and her health is very delicate.

24  But there's no question that your wife and daughter are going

25  to be better provided for in your absence than anybody else

1  I've ever heard that has come before the Court.

2          **MR. KEKER:**  Maybe Mr. Scruggs ought to sit down, Your

3  Honor.

4          **THE COURT:**  All right.  (Pause.)  Well, Mr. Scruggs,

5  you'll receive a transcript of this sentencing hearing.  And

6  I'll tell you now that, you know, there might be some things

7  that you can do to help yourself in the future; and you can

8  read about it.  You may not remember what I'm saying, but

9  there's some people who you're involved with who I have become

10 intrigued in this situation of what's going on.

11      When I see, from this case and others, that people who are

12 not lawyers are getting considerable amounts of money from a

13 legal settlement and -- you know, it intrigues me as to how --

14 what they're doing to earn it, if anything.  They're not

15 lawyers, so they're not receiving any settlements.

16      If you come -- you know, Balducci said that you know where

17 a lot of bodies are buried.  If you want to uncover some of

18 those bodies, it might help you in the future in this case and

19 this sentencing.

20      But based on these considerations, Mr. Scruggs, and

21 pursuant to the Sentencing Reform Act of 1984, it is the

22 judgment of the Court that you be committed to the custody of

23 the Bureau of Prisons to be imprisoned for a term of 60 months

24 on Count 1 of this indictment.  And the Court will recommend to

25 the Bureau of Prisons that you be housed in a facility that can

1  afford you the opportunity to participate in both mental health

2  and drug treatment programs.

3      Upon release from imprisonment, you shall be placed on

4  supervised release for a term of three years on Count 1.  There

5  are certain strict conditions of conduct that you must abide by

6  while you're on supervised release.  I'm not going to go over

7  those with you, but the probation officer will at the time you

8  are released.

9      It's further ordered that you should pay a fine in the

10  amount of $250,000 to the court clerk's office, a lump sum

11  payment of $250,000 will be due in 30 days.  And that will be

12  for the purpose of -- as one person who wrote a letter said, he

13  thought sending you to prison would be a waste of the

14  taxpayer's money.  To alleviate any concerns for that person,

15  the taxpayers won't have to pay for your incarceration; you'll

16  pay for it yourself.

17      It's further ordered that you should pay the usual

18  assessment.  And with your excellent representation during this

19  case, you know you have the right to appeal any sentence that

20  is imposed illegally or as a result of a miscalculation of the

21  guidelines.  You'll be given 30 days if you wish to report

22  yourself in 30 days, within 30 days.  You'll be given that

23  opportunity.

24      So that we'll have your understanding of that, I have here

25  a form that you agree that you will surrender yourself to the

DAILY COPY

1  institution that's designated for your service on the date that

2  the Court sets.  So we'll have your agreement for that, I'll

3  ask you to sign that; and your attorney can witness it.

4      (Parties complying.)

5          THE COURT:  Okay.

6          MR. KEKER:  It's signed, Your Honor.

7          THE COURT:  All right.  Let me have that.  All right.

8  Give me a calendar.  (Pause.)  All right.  It's ordered that

9  the Court will -- that the Court will allow this defendant to

10  remain out on his present bond, and your reporting date will be

11  August 4th by twelve o'clock noon.

12      And I will recommend that the Pensacola institution be the

13  place designated.  Of course, it depends on how many people are

14  there; and it depends on the Bureau of Prisons' situation.  But

15  normally, they will respect those requests.  Best of luck to

16  you.

17          MR. KEKER:  Thank you, Your Honor.

18          THE DEFENDANT:  I hope to come out of this a better

19  man, Your Honor.  Thank you.

20          THE COURT:  I think you will.  Good luck.

21          THE DEFENDANT:  Thank you, sir.

22          MR. DAWSON:  Thank you.

23          THE COURT:  All right.  If there's nothing further,

24  Court will be in recess.

25              (THE SENTENCING ENDED AT 10:46 a.m.)

DAILY COPY

1

                    C E R T I F I C A T I O N

2

    "I certify that the foregoing is a correct transcript from
3  the record of proceedings in the above-entitled matter,
   June 27th, 2008."
4                              /s/ Rita Davis Sisk_____
                               RITA DAVIS SISK, RPR, BCR, CSR #1626
5                              Official Court Reporter

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25